## IN RE LUSCOMBE'S WILL.

*January 11 — February 26, 1901.*

*Wills: Joint trustees: Right to appeal: Refusal of one to join: Jurisdiction: Costs: Termination of trust: Happening of contingency: Proceedings by creditor to reach income of trust fund: Parties: Distribution of estate: Assignment by distributee.*

1. Testamentary trustees who are given a portion of the testator's estate to hold and administer for the benefit of persons in existence and also for the ultimate benefit of yet unascertained persons, including unborn children, may appeal from an order or judgment for the distribution of said portion, even though all the persons in existence who are beneficially interested in the conduct of the trustees consent to such distribution.
2. In such a case one of the joint trustees who believes that the judgment deprives the trust estate of property belonging to it has power to appeal, notwithstanding the refusal of his co-trustee to join with him; and if all parties in interest, including such co-trustee, are before the appellate court it may consider the merits of the appeal.
3. The trustee so appealing acts in peril of being denied reimbursement of his expenses if his appeal is not taken in good faith and upon reasonable grounds.
4. A testator, after certain specific legacies, gave the residuum of his estate to his executors in trust to be invested and a part of the income paid to his son during life. He expressly declared that his intention in making such provision was to secure to said son the

In re Luscombe's Will.

necessaries of life, so that said income or estate could not be in any way controlled or disposed of by him or taken by his creditors. He directed that, in case any proceedings should be instituted for the purpose of reaching the income so provided for and of diverting it from the object intended by him, and a decree or judgment obtained for that purpose, then all payments from the income to the son should cease and, if there were no lawful issue of the son living, the trustees should distribute the property to the wife and a daughter of the testator. *Held,* that this direction, even if it were in conflict with the declaration of the testator's purpose, would nevertheless be controlling because it is mandatory and because it is the later provision. It does not, however, necessarily conflict with such general purpose, but merely implies a limit thereto.

5. By a stipulation under which, after a contest, the will was admitted to probate, the said widow and daughter conveyed to the son any portion of the body of the estate which might come to them in the event of the termination of the trust as to him. Such trust having been terminated by the happening of the specified contingency, *held,* that it was properly adjudged that said portion of the trust estate had passed to and become vested in the widow and daughter, and payment thereof to the son was properly directed in accordance with the assignment to him contained in the stipulation.

6. Before final settlement of the estate a judgment creditor of the son brought an action for the purpose of subjecting the son's interest in the income of said trust estate to the payment of his judgment, and obtained a decree in form to that effect. This was not done by said creditor with the purpose of avoiding the provisions of the will, but the son, knowing that it would have that effect, made no resistance to the action. *Held,* that thereby the contingency had happened upon which the trust as to the son was to terminate. The judgment was one obtained "for the purpose of reaching the income," within the meaning of the will, although the will itself put the income beyond the reach of such a judgment.

7. The fact that the trustees were not made parties to such judgment does not render it ineffectual to terminate the trust. Though not binding on the trustees, it was binding on the son personally and could compel him under penalty for contempt to pay over the instalments of income as they were received.

APPEAL from a judgment of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Affirmed.*

The appeal is from a judgment of the circuit court af-

firming, with certain modifications, the order of the county court for final distribution under the will of Samuel D. Luscombe. That will, which disposed of an estate of $85,000, after certain specific bequests devised the residue of the property to the executors, *David C. Green* and *Thomas J. Pereles*, as trustees to collect rents and profits, convert into money, and reinvest according to directions given; to pay therefrom the expenses of administration and certain specific bequests, some of which are paid and some lapsed by reason of the nonexistence of the conditions on which they were payable; but, further "b," to set aside the sum of $5,500, and pay the interest thereof to a daughter of the testator, *Nellie M. Sanger*, during the term of her life; the residue to be invested, and "the net income derived from such investments shall be paid in equal shares and semi-annual payments, respectively, to my son, *Robert* [*Luscombe*], and my said daughter *Nellie* [*Sanger*], during the terms of their respective lives." The foregoing was embodied in what was designated subdivision "f" of paragraph 7 of the will. The will proceeded:

"Eighth. In the event of the death of my said son, *Robert Luscombe*, either before or after my decease, I give, devise, and bequeath to the lawful issue, if any, of the said *Robert Luscombe*, one half ($\frac{1}{2}$) of the residue of my estate mentioned in subdivision 'f' of paragraph seventh of this will, together with the income then accumulated thereon. In the event of the death of my said son, *Robert Luscombe*, either before or after my decease, without lawful issue, said residue, including the unpaid income on all of the same, my said trustee shall: (1) Set aside one fourth ($\frac{1}{4}$) part of said residue to be added to the fund and held in trust and invested in first mortgage real-estate securities for the benefit of my said daughter *Nellie M. Sanger*, and the income thereof paid to her during the term of her natural life, in addition to the income provided under subdivision 'f' of paragraph seventh of this will. (2) To pay one fourth ($\frac{1}{4}$) of said residue to my said wife if living at such time. (3) The remainder, including the part to my wife in case of her death, to

In re Luscombe's Will.

be paid to my said daughter *Mary J. Wright;* she to have and to hold the same, to her, her heirs and assigns, forever.

"Ninth. In the event of the death of my said daughter *Nellie M. Sanger* either before or after my decease, I give, devise, and bequeath the said fifty-five hundred (5,500) dollars mentioned in subdivision 'b' of paragraph seventh of this my will, the one-half ($\frac{1}{2}$) of the residue of my estate mentioned in subdivision 'f' of said paragraph seventh, together with the income accumulated thereon, and the one-fourth ($\frac{1}{4}$) part set aside of the share of my said son, *Robert Luscombe,* in the event of his death, as provided for in the preceding paragraph eight, all to be paid to the lawful issue of my said daughter *Nellie M. Sanger,* if any. In the event of the death of my said daughter *Nellie M. Sanger,* either before or after my decease, without lawful issue, said residue, including the unpaid income on all of the same, my said trustee shall: (1) Set aside one fourth ($\frac{1}{4}$) part of said residue, to be added to the fund, and held in trust, and invested in first mortgage real-estate securities for the benefit of my said son, *Robert Luscombe,* and the income thereof paid to him during the term of his natural life in addition to the income provided under subdivision 'f' of paragraph seventh of this will. (2) To pay one fourth ($\frac{1}{4}$) of said residue to my said wife, if living at such time. (3) The remainder, including the part to my wife in case of her death, to be paid to my said daughter *Mary J. Wright;* she to have and to hold the same, to her, her heirs and assigns, forever.

"Tenth. I hereby declare that, in making provision for the payment of the income of the portion of my estate hereby set aside for my son, *Robert Luscombe,* and my daughter *Nellie M. Sanger,* it is my design to secure to them, and to each of them, the necessaries of life, so that such income or estate cannot be assigned, charged, pledged, hypothecated, or in any way or manner controlled or disposed of by them, or either of them, or taken by their creditors; and for the purpose of making myself fully understood on this point, and to carry out such design, it is my will that my executors and trustees may, in their discretion, make payments to or for them, or either of them, from said net income, as provided for, or to wholly withhold the same, and in case any proceedings are instituted for the purpose of reaching the income so provided for, and of diverting it from the ob-

ject intended by me, and a decree or judgment obtained for that purpose, that then from that period all payments from the said income to them, or either of them, shall cease, and I direct my executors and testamentary trustees from thenceforth to expend the said income provided for in this item of my will, so far as may be necessary or requisite, to the education and maintenance of the lawful issue of them, or either of them, until such issue arrive at the age of twenty-one years, in which event the said property shall be by my said executors and trustees assigned and conveyed to the said issue in the proportion and as provided for for them in paragraphs eight and nine of this will; and in case there is no lawful issue of them, or either of them, living, then to distribute to my daughter *Mary J. Wright* and my said wife and their issue as hereinbefore provided."

The will was admitted to probate by stipulation of all parties except the executors, after an extended contest, a part of which stipulation consisted in a conveyance to *Robert Luscombe* by the widow, *Seville Luscombe* (now *Turner*), and by *Mary J. Wright*, of any portion of the body of the trust residuum which might come to them in the event of the termination of said trust as to *Robert*, either by adjudication of its invalidity, or by reason of any judgment of any kind against said *Robert*. Thereupon, before final settlement of the estate, on March 18, 1899, one Goodwin recovered a judgment against *Robert Luscombe* in justice's court, transcripted the same to the circuit court, issued execution thereon, which was returned unsatisfied, and thereupon commenced an action in the superior court of Milwaukee county upon said judgment, for the purpose, as the court found, of "subjecting the interest of *Robert Luscombe* in the income bequeathed for him in trust by said will to the payment of said judgment," and recovered a decree or judgment in form subjecting the said interest of *Robert Luscombe* to the payment of said Goodwin judgment and costs. The court further found that said judgments were entered upon a *bona fide* debt, and not with any purpose on the part of said

Goodwin of avoiding the provisions of the will of said testator for the benefit of said *Robert*, but that said *Robert* knew that said judgment would have that effect, "and, while not appearing in said action, permitted the said judgments to go against him, and acquiesced in them, by making no resistance to said actions and failing to pay said demand." Neither of the executors were parties to Goodwin's actions.

At the time of his father's death, *Robert* was, and at all times since has been, without issue, and is now unmarried, being divorced from his former wife. *Nellie Sanger* is a widow without children, and *Mary J. Wright* has two children. Said three persons are the only children, and with the widow, *Seville*, are the only heirs at law, of the testator. It was stipulated that at the time of making the will, and at all times since, *Robert* was a practicing attorney, in no wise dependent upon his father or any other person, and received no pecuniary assistance from his father, but maintained himself by his own exertions, and since 1890 had been a total abstainer from all intoxicating liquors or any form of intoxicants, which facts were well known to the testator at and prior to the time of making his will; that at that time *Robert Luscombe* was a married man, but living apart from his wife, divorce proceedings being contemplated. His wife demanded about $10,000 permanent alimony, which demand was known to the testator, and testator was insistent that said wife should not have the right to enforce any claim to any of testator's property which might come to *Robert* by inheritance from him, and at and prior to the time of making the will in question asserted that this demand of *Robert's* wife was testator's controlling motive for making the trust provisions in said will relative to *Robert*, which trust provisions, however, were made applicable to all judgments, as therein described, so as to comply with the law, and not specify any particular demand of any particular person. Subsequent to testator's death, *Robert* obtained

In re Luscombe's Will.

a divorce from his wife, who has since remarried, so that she has no further claim for alimony.

The circuit court held that by the rendition of the judgments in favor of Goodwin arose the condition upon which the trust for the benefit of *Robert* became terminated, under the tenth paragraph of the will, and that, he having no issue, a certain portion of the body of said residuum passed to and became vested in *Mary J. Wright* and the widow, *Seville Luscombe (Turner)*; that their assignments thereof to *Robert* were valid as between them, and transferred to him that to which they thus became entitled,— and accordingly directed payment to *Robert Luscombe* of one half of the residue devised in trust, less the specific $5,500 to *Nellie Sanger*, and the taking of his receipts therefor, as a satisfaction of so much of the share of the estate assigned and distributed to *Mary J. Wright* and *Seville De G. Turner*.[1]

From an order of distribution substantially to this effect in the county court, both of the trustees appealed to the circuit court. Upon the rendition of the decree in the circuit court the trustee *Pereles* decided and declared that, in his opinion, the welfare of the estate did not require further appeal or litigation, and declined to join in an appeal, whereupon the other trustee, *David C. Green*, believing the decree to do violence to the will of the testator, served notice of appeal in his own name upon all other parties interested in the estate, including his co-executor and trustee, *Pereles*.

For the appellant there were briefs by *Ryan, Ogden & Bottum*, and oral argument by *L. M. Ogden*.

For the respondent *Pereles* there was a brief by *Charles F. Hunter* and *Guy D. Goff*; for the respondent *Luscombe*

---

[1] In the stipulation by which the will was admitted to probate it was provided, in substance, that the portion of the trust residuum of which the income was to go to *Nellie M. Sanger* should be continued in trust under the terms provided in the will, and that such trust should be confirmed by the final decree.— REP.

In re Luscombe's Will.

there was a brief by *Timlin, Glicksman & Conway;* and the cause was argued orally by *Mr. Hunter* and *Mr. W. H. Timlin.*

DODGE, J. 1. Respondents move to dismiss the appeal on two grounds: first, that the executors, as such, have no interests to be affected by the final order of distribution, and are not aggrieved thereby; second, that one of the co-trustees or co-executors cannot appeal alone, hence no jurisdiction is conferred by his attempt to do so.

The first ground of the motion seems to be in oversight of the fact that the executors are also trustees, and that the appeal is in both capacities. As trustees they are beneficiaries under the will, to receive nearly one half of the testator's estate, to hold and administer the same for the benefit first of *Robert Luscombe* and *Nellie M. Sanger,* but also for the ultimate benefit of yet unascertained persons, including unborn children of either *Robert* or *Mrs. Sanger.* If the judgment appealed from is wrong, and the corpus of the half of the trust estate is not yet properly distributable to *Mrs. Turner* and *Mrs. Wright,* then it denies these trustees property which it is their duty to acquire and keep,— for the benefit of others, it is true; but in demanding and acquiring it they are the representatives of those others, and both entitled and bound to vindicate their rights. *Tyson v. Tyson,* 94 Wis. 225; *Jamison v. Adler-Goldman Co.* 59 Ark. 548. It matters not that all persons now in existence who are beneficially interested in the conduct of the trustees have consented that they yield to the judgment of the circuit court. Those officers still owe a duty to possible unborn children, whose rights cannot be cut off by consent. *Ruggles v. Tyson,* 104 Wis. 500. That duty is one of diligence to protect such helpless ones, and for breach of such duty, negligence, or laches, the trustees may in the distant future be called to account. Clearly, they and those whom they represent are

deprived of property by the decree appealed from, and are aggrieved if it be wrong.

Whether one of the two co-executors or co-trustees can appeal without the other is a question seemingly undecided,— at least, no direct authority is cited by either party, nor has extended research on our part disclosed any. Respondents' counsel presents, as analogous, the rule with reference to writs of error to review joint judgments. If analogy exists between appeal and writ of error, it is fatal to this ground of motion; for the rule requiring joinder of all those against whom the alleged erroneous judgment stands is one of practice merely, and does not go to the jurisdiction nor to the power of one to institute the proceeding, so far at least but that the court has control of the subject by severance or by amendment. *Harrington v. Roberts*, 7 Ga. 510; *Hardee v. Wilson*, 146 U. S. 179. And the objection is one which, unless promptly made by motion to quash or dismiss the writ, will ordinarily not be considered. *Huebschmann v. Cotzhausen*, 107 Wis. 64. Upon the rule of this case a motion to dismiss even a writ of error would probably be overruled under the circumstances of the motion under consideration, which was not presented until the case was reached for argument.

We do not, however, discover much analogy between the question of joinder in writ of error of all joint judgment defendants, and that of the power of one of two joint trustees to arouse our jurisdiction by a statutory appeal. The former is a question of practice in a new suit, originally instituted in this court by a common-law writ. The latter must be answered from consideration of the powers of joint executors and trustees generally, and from the statutes prescribing our jurisdiction, and the method of invoking it by appeal,— a proceeding in the original suit. *Northwestern M. L. Ins. Co. v. Park Hotel Co.* 37 Wis. 125, 131. Addressing ourselves to the latter consideration, it seems to be pretty

well settled that statutory appeals are not subject to the rule of joinder which controls writs of error, and if the only objection here were failure to join as appellants all of the joint judgment defendants, independently of their co-trusteeship, we should have little hesitation in overruling it. *Mattison v. Jones*, 9 How. Pr. 152; *People ex rel. Keal v. Wayne Circuit Judge*, 36 Mich. 331; *Northwestern M. L. Ins. Co. v. Park Hotel Co.* 37 Wis. 125, 133; *Hunter v. Bosworth*, 43 Wis. 583, 590; *Hardee v. Wilson*, 146 U. S. 179.

Turning then to an examination of the power of one of several joint trustees or executors, the underlying and general principle is that the trust is imposed on all jointly; that all together constitute but one collective person for the purpose of executing it; and, as a corollary, that the act of any of them, less than all, is not the completed act of that collective person and is ineffectual. 1 Perry, Trusts, § 411. The application of this principle to its full extent is not universal. 1 Perry, Trusts, § 411 *et seq.*; 2 Woerner, Administration, § 346 *et seq.*; *Weir v. Mosher*, 19 Wis. 311, 316. In the main, however, any substantial affirmative act—such, for illustration, as the conveyance of property—requires the joint action of all in order to have any validity. The application of this rule is comparatively easy to affirmative acts, omission of which would work no change in the property or estate, but becomes difficult when considering certain acts, omission of which has quite as direct effect as would the act itself. Among these latter fall the bringing of suits to recover or conserve property. Omission to sue may defeat a just claim, either by suffering the bar of limitation statutes or by insolvency of a debtor. It may effect the practical surrender or transfer of property. Thus it is apparent that the literal application of the rule to such cases may work the exact converse of its intention; for thereby one trustee, by refusing to act, might in practical effect accomplish release of a debt or conveyance of property without the con-

sent of his co-trustee. It is not surprising, therefore, that courts, while recognizing the rule of practice that joint trustees must join as plaintiffs, have also recognized the necessity that one trustee may invoke the aid of courts for protection of the trust estate, although his co-trustee refuse to join with him. Trustees are under the control of courts of equity, and it would be strange indeed if such courts could not protect against *devastavit* by the laches of one of several joint trustees. The ability of one to move alone under such circumstances is essential, not only to protect the estate, but also to protect himself from liability which might otherwise fall on him if valuable rights were lost through inaction when action is a duty. *Crane v. Hearn*, 26 N. J. Eq. 381. All of the following authorities decide or recognize the possibility of one trustee arousing the jurisdiction of courts in some form when he differs from a co-trustee as to the proper course: Perry, Trusts, §§ 411, 417; *Bockes v. Hathorn*, 78 N. Y. 222; *Thatcher v. Candee*, 4 Abb. Dec. 387, 391; *Portis v. Creagh*, 4 Port. (Ala.), 332, 343; *Reno's Ex'rs v. Davis*, 4 Hen. & M. 283, 288; *Todd v. Daniel*, 16 Pet. 521; *Weetjen v. Vibbard*, 5 Hun, 265, 267.

Among these citations are cases insisting upon the necessity of joinder of all trustees as a rule of practice, but recognizing that such rule does not deny the power of one to arouse the jurisdiction of the court, either by action in the name of all without their consent, or by suing alone, in which case the defect of parties may be cured by amendment. Our statute (sec. 2604, Stats. 1898) provides a method of avoiding that rule of practice, and a substitute for the ancient procedure by summons and severance, in the simple expedient in all actions of making defendants of those in joint interest who refuse to join as plaintiffs.

It seems certain, therefore, both on reason and authority, that one joint trustee is not without power to invoke the aid of courts for protection or recovery of the estate, when,

in his judgment, neglect to do so would be a breach of duty. Of course, in such case he must, as matter of practice, excuse the nonjoinder of his co-trustee, and bring him before the court as a defendant. Equally of course, he acts in peril of being denied reimbursement of his expenses if he litigates not in good faith, or without grounds to reasonably justify his judgment; but neither of these considerations goes to his power, nor to the power or jurisdiction of the court.

With this view as to the power of one joint trustee to originate litigation, we cannot doubt his power to invoke the appellate jurisdiction of this court under like limitations. An appeal is certainly no more extreme an act than the original commencement of action, even if we look upon it as the equivalent of writ of error, as some courts seem to. In this court, it has been said that appeal is but one step in a suit towards the final adjudication which the law has provided for. *Northwestern M. L. Ins. Co. v. Park Hotel Co.* 37 Wis. 131. If this view be adopted, the power of the single trustee would seem all the more obvious.

We conclude, therefore, that if the appellant, in good faith and on reasonable grounds, believed that the decree of the circuit court deprived the trust estate of property belonging to it, he had the power to appeal, notwithstanding the contrary opinion of his co-trustee, and that all parties in interest, including such co-trustee, being before this court, we have jurisdiction to consider the merits of the appeal, and that the motion to dismiss must be denied.

2. As appellant's counsel forcibly suggests, the decree before us presents at first glance the appearance of awarding *Robert Luscombe* the entire corpus of an estate which the testator clearly intended not to give him, but to tie up in the hands of trustees so that *Robert* should receive only the income. That appearance is, however, deceptive, and disappears upon any more than the most superficial examination. Absolutely nothing is awarded *Robert* under the will

or by way of gift from his father. The corpus of the trust estate is by the final order assigned and distributed to the widow, *Seville*, and to *Mary J. Wright*, to whom, as is entirely obvious, the testator intended to give it upon a certain contingency. The fact that they have assigned it to *Robert*, as a method of making a gift from themselves to him, can no more be said to thwart the will than if the widow had chosen to give him, by assignment, a part of her $35,000 legacy,— no more, indeed, than if both the widow and *Mrs. Wright* had received payment direct to themselves, and presented *Robert* with their checks for the amount. We must therefore dismiss the consideration that he by their bounty receives the actual payment from the executors, and consider the situation as if the decree not only assigned this disputed share to *Mrs. Turner* and *Mrs. Wright*, but ordered it paid to them as well, and as if they were the respondents contending for it here.

Passing then to a consideration of their rights under the will, we are confronted with the direct and positive command: " In case any proceedings are instituted for the purpose of reaching the income so provided for, and of diverting it from the object intended by me, and a decree or judgment obtained for that purpose, that then from that period all payments from the said income to them [*Robert* and *Nellie*], or either of them, shall cease; and I direct my executors and testamentary trustees, . . . in case there is no lawful issue of them [*Robert* or *Nellie*], or either of them, living, then to distribute to my daughter *Mary J. Wright* and my said wife and their issue as hereinbefore provided." This behest is mandatory, and quite as unambiguous as is the declaration of a purpose and design to provide for either *Robert* or *Nellie* the necessaries of life without subjecting either the estate or income to their control. It cannot be ignored. If it is in conflict with the declaration of design, it must dominate both because it is

mandatory and because it is the later provision.   Cassoday,
Wills, § 683.   But it does not necessarily conflict with such
general design, but merely implies a limit thereto.   Such
direction may indicate either that the testator considered
such design hopeless or impossible of accomplishment in
favor of a *cestui que trust* subject to such a judgment.
Hopeless, because after money reached his hands it could
not have full efficiency in providing necessaries of life to
one embarrassed by attacks or harassed by solicitations of
creditors, to whom portions of the testator's bounty would
probably be diverted.   Impossible, because, as testator may
have believed or been advised, such a judgment creditor
could reach and absorb the trust property or income unless
such cesser and bequest over were provided for in the will.
Whether or not such belief, if it existed, was well founded,
we need not decide.   It was by no means unsupported by
respectable authority.   *Bramhall v. Ferris,* 14 N. Y. 41;
*Bull v. Kentucky Nat. Bank,* 90 Ky. 452; Perry, Trusts,
§ 388; and *Bridge v. Ward,* 35 Wis. 687.   These might
well justify the extreme precaution, although, as appel-
lant's counsel forcibly argues, there is a considerable
weight of authority to the contrary, as cited to us by ap-
pellant.   *Nichols v. Eaton,* 91 U. S. 716; *Garland v. Gar-
land,* 87 Va. 758; *Nickell v. Handly,* 10 Grat. 336; *Roberts
v. Stevens,* 84 Me. 325; *Broadway Nat. Bank v. Adams,* 133
Mass. 170; *Hall v. Williams,* 120 Mass. 344,— the rule of
which had not, however, been adopted in Wisconsin.

Whatever may have been the testator's motive, however, it
was clearly his purpose that *Robert Luscombe* should enjoy
the income of one half of the trust estate only until the
happening of the contingency defined above, and that upon
that contingency, he being without issue, the widow and
*Mary J. Wright* should receive the corpus of the estate.   It
remains, then, to ascertain whether the record discloses that
the specified contingency has occurred.

It appears — indeed, is found by the court without excep-
tion — that, upon recovery of a judgment at law and return
of unsatisfied execution, action was commenced by Good-
win " for the purpose of subjecting the interest of *Robert* in
the income bequeathed for him in trust by said will to the
payment of said judgment, and that in the action last men-
tioned a decree or judgment was entered in form subject-
ing the said interest of *Robert Luscombe* to the payment of
said Goodwin judgment." This would seem at first glance
so direct an affirmative answer to the question as not to
leave room for discussion, but appellant with much force
insists to the contrary. He urges, first, that the proceeding
and judgment taken and recovered by Goodwin, as matter
of law, cannot have been for the purpose of reaching and
diverting the income of the trust estate, within the meaning
of the will, because it could not have that effect, since the
will itself puts both estate and income beyond the reach of
such proceeding and judgment. This reasoning is faulty,
in that it deprives this clause of the will of all significance.
It attributes to the testator the absurdity of providing a
limitation over upon a contingency which he by the same
will makes impossible. Certainly when the testator de-
scribed the class of judgments upon recovery of which im-
portant rights were to vest, he intended to describe such as
might exist, and might exist, too, without having the effect
to divert any of the estate or income to the judgment cred-
itor,— a result guarded against with the utmost precaution.
He did not make the limitation over depend on recovery of
a judgment which might or would reach and divert the in-
come, but of one having such purpose. The judgment in
favor of Goodwin goes as far in that direction as any judg-
ment can. It, in form, subjects that income which the will
gives *Robert* to the payment of the Goodwin judgment. It
evinces the purpose and exhausts the ability of both the
plaintiff therein and the court rendering it to reach that

income.   If it fails, that result comes from the withdrawal of the income and the estate from its reach, and from *Robert's* reach as well, not from any want of purpose on Goodwin's part.   We can entertain no doubt that it is of the class of judgments contemplated by the testator and described by him.

A further contention that this particular judgment, as matter of law, cannot be recognized as having a purpose to reach and divert the income, rests upon the premise that it cannot effectuate that result in the absence of the trustees as parties to it.   That premise, however, is unsound.   It may be conceded that no decree could be effectual to control the conduct of the trustees, nor the estate or income while in their hands, unless they were made parties.   Such are the cases cited by appellant.   *O'Hara v. MacConnell,* 93 U. S. 150; *McArthur v. Scott,* 113 U. S. 340.   But such judgment or decree is binding personally on *Robert* and can compel him, under penalty for contempt, to hand over the semi-annual instalments of income the moment he receives them; thus, in practical effect, reaching that income and diverting it from *Robert's* support to the payment of Goodwin's judgment.   The nonjoinder of the trustees is, however, one of several very significant evidentiary facts bearing on the purpose which Goodwin actually had in the proceedings prosecuted by him.   That omission, when joined with the consideration that *Robert,* apparently without necessity, suffered judgment and supplementary creditor's suit on so trifling a claim (less than $200), and that those acts did not occur till after his arrangement with the widow and *Mrs. Wright* assuring him benefits upon the termination of the trust, might well arouse suspicion, if not justify belief, that the whole proceeding was collusive between him and Goodwin, and not in good faith for the purpose of reaching and diverting the trust income to Goodwin's judgment.   That question, however, is not open on this appeal, since the purpose of the proceeding is established by a finding of the

circuit court to which there is no exception, and which therefore must conclude us as to the question of fact.

The views thus expressed sufficiently indicate the conclusion we must reach, namely, that the contingency was presented upon which the limitation over to *Mrs. Turner* and *Mrs. Wright* was to take effect. That conclusion supports, in general, the decision and judgment of the court below. Whether all the details of that judgment are strictly correct, we need not consider, for it is assailed only in its general scope, and, as we concur with it in that respect, we must affirm it.

We see no reason to doubt the good faith of the appellant executor and trustee in seeking the opinion of this court before surrendering so large a portion of the estate intrusted to him; hence the statutory costs of both parties in this court are ordered paid out of the estate.

*By the Court.*— Judgment affirmed.