ESTATE OF BOYLE: BOYLE and others, Appellants, vs. MARSHALL & ILSLEY BANK and another, Trustees, Respondents.

*April 13—May 11, 1948.*

*John P. McGalloway* of Fond du Lac, for the appellant Francis H. Boyle.

For the appellants Henry Francis Boyle, Helen Marie Boyle, Margaret Madeleine Saffouri, and Madeleine Boyle Saffouri there was a brief by *John J. Schneider,* attorney, and

*John T. Boyle* of counsel, both of Fond du Lac, and oral argument by *Mr. Schneider.*

For the respondents there was a brief by *Churchill, Davis & Churchill* of Milwaukee, and oral argument by *W. H. Churchill.*

FRITZ, J.   Upon the petition filed in the county court by Francis H. Boyle (herein called "Francis"), and likewise upon the petition filed by his children, Henry Francis, Helen Marie, and Margaret, and his granddaughter, Madeleine Boyle Saffouri, by her guardian *ad litem,* they sought to have the county court give to certain provisions in the will of Julia G. Boyle (Francis' mother) by which she created two testamentary trusts, a construction which would contravene certain provisions thereof in relation to the two testamentary trusts created by her for the benefit of said petitioners and, in the event of certain conditions, also other beneficiaries.   In addition there was also a living trust created by Julia G. Boyle, the assets of which were valued at approximately $900,000, and under the terms thereof (as is stated in *Boyle v. Marshall & Ilsley Bank,* 242 Wis. 1, 2, 6 N. W. (2d) 642),—

"  . . . one half of the income is to be paid to Francis Boyle and the other half is to be retained by the trustees and added to the corpus, until the oldest of Francis' children shall attain the age of thirty.   From that time Francis is to receive no further income, and as each child reaches thirty, he is to be paid his share of the corpus of the trust fund.   There are various provisions relating to the possible death of Francis or the children with or without issue, all of which provide for the division of the corpus.   Finally, there is a provision that if no issue of Francis reach the age of thirty, and no issue of said children survive, on the death of the last child of Francis, the trust shall terminate and the corpus be divided under the terms of the will of the settlor."

The Marshall & Ilsley Bank (herein called the "Bank") and Francis are the trustees of one of said testamentary trusts, and he and the First Wisconsin Trust Company (herein called

the "Trust Company") are the trustees of the other testamentary trust. These corporate trustees opposed the granting of the relief prayed for by petitioners. So far as here material the following undisputed facts appear from allegations in the petitions and the corporate trustees' answers, and other matters made of record by stipulations between the parties and the county court's findings and conclusions after hearings held pursuant to said petitions. The value of the assets of each of the testamentary trusts was approximately $1,000,000. The will provided that,—

*one half* of the *income* from *each* of said *trusts* shall be *paid to Francis during his lifetime;* and during said time the other *half* of said income shall be *added to the corpus* of said trust. *(No provision was made for any payment to or for the children of Francis during his lifetime.)*

Said trusts are to continue for twenty-one years after the death of Francis if he leaves issue surviving him. Upon his death each of his said children under twenty-five years is to receive $4,000 per year for his maintenance, support, benefit, care, and comfort, plus an additional allowance of not to exceed $3,000 for each year he or she attends college or university. The *balance of the income,* if any, is to be added to the corpus of said trusts. Upon reaching the age of twenty-five years, during the continuance of said trust, each natural child is to receive an equal portion of the net income of said trust estates and for the benefit of any children who have not yet reached the age of twenty-five years, their portions are to be accumulated during the continuance of said trust and they are to receive his or their parents' share of said income, or if the child so dying is not survived by issue, his brothers or sisters shall receive the same. (This provision does not in any way depend upon said child or children being entitled to a share of the corpus of said trusts.)

*At* the *expiration of twenty-one years after the death of Francis providing any of his children survive, each* of said children is to *receive one-third share* of each of said trusts and all accruals and the issue of any deceased child or children to receive the share of his or her deceased parent.

Should Francis die without leaving issue or if all of said issue die within twenty-one years after his death, the trusts are to terminate and the corpus thereof plus accruals conveyed to Elizabeth C. Conlin, William F. Gary, and Howard H. Boyle, or the issue of either. If any of them have died leaving no issue surviving, then the share of such person so dying shall be paid to the survivor of this group.

Since Julia G. Boyle's death, William F. Gary died without issue; Elizabeth C. Conlin died, leaving as her sole issue, Thomas C. Conlin and B. Henry Conlin, both of whom are over twenty-one years of age and competent. Howard H. Boyle is living and has three children, all of whom are of age and competent, except Betty Boyle, who is a minor. Thomas C. and B. Henry Conlin, and Howard H. Boyle have executed assignments authorizing payments to be made in accordance with the demands of both or either of the petitions and assigning their interests in said trust to the extent of said payments to the petitioners. In her will the testatrix expressly provided that any notes or indebtedness owing to her by Francis at the time of her death should be added to the inventory of her estate and one-sixtieth part thereof shall be collected from Francis every month over a period of five years from the date of the executors' assignment thereof to the trustees. That indebtedness amounted to $168,200.31 when the testatrix died, and that sum was withheld by the trustees in said monthly instalments from Francis' portion of his income from said trusts. Thus the said indebtedness was fully repaid by January 1, 1944. However, on the money so withheld by the trustees the federal and the state governments levied income taxes, which Francis failed to pay, and as a consequence he owes delinquent federal income taxes of $31,672.54, and state income taxes of $24,096.73, plus accrued interest; and additional assessments are expected for the year 1946. In October, 1946, the United States instituted action against Francis to foreclose the federal income-tax lien arising

for said delinquencies, and all payments to Francis under said testamentary trusts, and the living trust, of which he is a life beneficiary, were enjoined by the federal district court.

Francis has no property except a 1939 Plymouth automobile and certain household furnishings, which are subject to chattel mortgages; but ever since his mother's death Francis had had and may continue to have under her will, as long as he desires, the use of her suitably furnished residence free from payment for rent, taxes, or upkeep. Francis and his wife, Helen D. Boyle, were divorced March 4, 1939, and the custody of the five minor children (two adopted) of the parties was awarded to her, and he was ordered to pay $800 per month for their support; but alimony was reserved to be ordered when his income warranted. From March 4, 1939, to November, 1946, he was able to pay and paid only $500 per month as support money, and from November, 1946, until said restraining order, he paid $800 per month, but no alimony has ever been paid. The children have lived with Mrs. Boyle and have been entirely dependent upon said support-money payments except that the daughter Madeleine has for one year past been married, and that the son Henry has been in the armed services for about the last two years. In the petitions it is alleged that Francis' suffers from a congenital condition which requires constant medical treatment and makes it necessary for him to have an attendant and helper about his home and person; that Francis' wife is under the doctor's care and it is necessary for her to have help in her home; that the daughter Helen has been physically incapable of earning a livelihood; that Mrs. Saffouri likewise suffers from a congenital condition which renders it desirable that she receive specialized training and psychiatric treatment, and her child was born with an eye ailment which necessitates special medical care for her which her parents are not financially able to provide; and that since said federal court injunctional pro-

ceedings the petitioning children are on the verge of destitution and are living without any of the comforts of life.

On the other hand, during the years 1936 to 1946, and the first three months of the year 1947, Francis received, in cash, from his share of the income of said two testamentary trusts and the living trust created by Julia G. Boyle, and for salaries for services as cotrustee of said trusts, $203,950.85, plus $1,485, for services rendered by him in supervising a farm belonging to one of said trusts, making the total sum of $205,435.85 in cash, exclusive of the $168,200.31 owing to his mother, and which was deducted by the testamentary trustees, as directed by the testatrix, until that indebtedness was discharged by January 1, 1944. Thereafter, between January 1, 1944, and April 1, 1947, Francis received directly, without any deduction therefrom, the entire one half of the net income of the testamentary trusts as well as his salaries and one half of the net income from the living trust. Thus during the years 1936 to 1943, inclusive, he actually received $106,308.78, or an average of $13,308.78 per year, and since the indebtedness to his mother was discharged he received during the years 1944 to 1946, and up to April 1, 1947, $98,965.62, or an average of $30,450.96 per year. In 1946 it was $32,914.86, and his income seems to be increasing.

In relation to Francis' petition for a judgment authorizing the trustees in contravention of the testamentary trusts created by his mother's will to pay out of the corpus of those trusts his delinquent federal and state income taxes in order that he may receive and use his income from said trusts for the care and support of himself and his family, the county court determined and entered judgment that Francis was not entitled to such relief in view of our decision in the *Estate of Boyle*, 232 Wis. 631, 288 N. W. 257. That judgment entered pursuant thereto must be affirmed. For the reasons and conclusions stated on the appeal in that case, in relation to the rights

of Francis as a *cestui que trust* under the testamentary trusts, the granting of his present application that the trustees be authorized by the court to invade the corpus of the testamentary trusts for the purpose of paying their father's delinquent income taxes would clearly be unauthorized and contrary to express provisions in the will creating the trusts. There is no other provision therein whatever which can be deemed to authorize the payment by the trustees of any indebtedness of Francis. The only provisions therein in relation to indebtedness on his part expressly direct that all the notes executed by him, which the testatrix may hold at the time of her death "shall be collected *from my said son,* . . . and the proceeds added to the corpus of my estate, . . . that all such notes shall be paid in full by my son to my estate;" and "that each of said trustees shall, over a period of five years from the date of such assignment, retain enough of that portion of the income of its respective trust to which said Francis Henry Boyle is entitled under the terms of this will to pay and satisfy said notes in full." Neither is there in the will any provision for the payment of any indebtedness on his part whether or not it was or could have been anticipated or foreseen, which can be deemed to authorize or permit any encroachment upon the corpus of the trust estates or any accruals thereto except in the event of certain specified occurrences or conditions which are expressly stated in the will. All that we stated in *Estate of Boyle, supra,* in relation to the same provisions in this will, is still applicable as to all the relief sought by any or all of the petitioners on this appeal. It suffices to repeat here particularly the following:

"The petitioner seeks to modify the provisions in a will made by the testatrix for the distribution of income from two certain testamentary trusts. He is seeking an augmentation of income so that he can pay debts owed by him to others than the estate and meet obligations, which will be possible if a variation of the terms of the trust as prayed for is made. This cannot, however, be allowed. To contravene the will as

prayed for would be making a disposition of property contrary to the provisions of the instrument creating the trusts; and would amount to a gift over to him of property of others, he being so situated by the terms of the will with regard to title and succession that the property not only does not belong to him but he never will be entitled to it." (p. 636.)

"The scheme of the testatrix in the preparation of the will and codicil appears and it indicates that, having in mind that her son would be embarrassed financially, she proposed to prevent the depletion of her estate. She therefore excluded him from taking any part of the corpus thereof." (p. 641.)

"Whatever consideration may have been in the mind of the testatrix when drawing her will and codicil, it *appears* that the inheritance of the grandchildren and the *possible inheritance of others* was associated with the bequest to Francis H. Boyle. The *conserving of the estate was made of primal importance.* While the provision for a sufficient income to Francis was desired, at the same time the *possibility of extravagance on the part of any member of the family endangering the strength of the fortune* was given consideration and *was guarded against.* She created a plan under which her son was to have a suitably furnished residence, a position which would pay him $200 per month, and the benefit of an income from a trust independent of and separate from the testamentary trusts. The proportion of income from all of these trusts which goes to him is only during his life. The residue, with minor exceptions, she wills and directs to be added to the corpus of her estate and *this direction is mandatory.*" (p. 637.)

"The testatrix planned building up an estate which eventually will go to her son's children, and in the event of their failure to survive, to others named in the will, a sister of testatrix, her brother, and a nephew of her deceased husband or their issue free and clear of any trust and in equal shares." (p. 639.)

The present proceedings instituted by the petition of Francis' children do not differ in point of the principles involved from the proceedings under consideration in *Estate of Boyle, supra,* and *Boyle v. Marshall & Ilsley Bank, supra.* Although in form by a somewhat different method of ap-

proach, substantially the same relief for Francis primarily is sought upon virtually the same underlying grounds assigned in the former petitions, viz.: petitioners' desire to augment what they assert to be an inadequate income to meet living expenses of Francis and his family and to pay his personal obligations, by taking from the corpus of the trusts,—which does not, and never will, belong to him, and may not even ever belong to his children or grandchild,—sufficient amounts to pay and satisfy his delinquent income taxes.

Even in respect to the childrens' petition for allowances for their benefit of necessary and reasonable amounts out of the portions of the income of said trusts which has accrued and is continuing to accrue and become part of the corpus from which said children may become entitled under the will to receive under the will under some conditions some payments upon reaching the age of twenty-five years, there can be no such payments made to them out of the corpus of the trusts during the lifetime of Francis. It is only upon his death that there can become operative and applicable to his surviving children the provision in section E of the will, which authorizes the trustees to apply the specified amounts of the trust funds to the maintenance, support, etc., of his surviving children. Making of such payments to them prior to the death of Francis would clearly contravene the express terms of the testamentary trusts in relation to the corpus in question. The testamentary provisions in relation thereto are substantially similar, so far as here material, to the provisions creating the living trust set up by the same settlor for the same children as beneficiaries under the declaration of trust involved in *Boyle v. Marshall & Ilsley Bank, supra.* In that case it was likewise contended on behalf of these beneficiaries that for their necessary or proper care, maintenance, or education the court could under sec. 231.21 (2), Stats., adjudge the application of a portion of the accruing income of the trust fund, which under the provisions creating the trust was required to be added to the corpus thereof. The following, which we then said in

reversing a circuit court judgment purporting to authorize such use of funds in contravention of the terms of the living trust, is equally applicable in the case at bar, to wit:

"The settlor of the trust had a right to dispose of her property as she chose, and it is not the function of the court to rewrite the trust instrument with an eye to what it believes a more just distribution of the property. The trust itself makes no absolute provision for these infant plaintiffs; the provisions for these children are conditioned and take effect upon their reaching the age of thirty. Until that time the trustees are ordered to pay one half of the income to Francis Boyle and to keep the other half to add to the corpus. The trust instrument, then, makes no provision for the payment of this money. Does sec. 231.21, Stats., allow the court to disregard the settlor's directions on what shall be done with the second half of the income? We conclude that it does not. . . . It would seem obvious from a reading of the section of the statutes [sec. 231.21] above quoted as well as from a reading of sub. (4) of the same statute that in order to come under the provision an infant beneficiary must have some *absolute and uncontingent* interest in the trust estate. The court may provide for anticipating benefits but it may not confer them contrary to the intent of the settlor. Where, as here, the applicant has only a contingent interest in the fund, any advance must necessarily be detrimental to the rights of those who may get the estate in case the contingent interests fail to materialize. This is especially true since the advance is sought on the basis of the depleted financial condition of the applicant. Here *plaintiffs may never be entitled to any share in the trust* at all, and to give them $6,000 would be to contravene the intent of the settlor and to prejudice the rights of other beneficiaries of the trust." (242 Wis. 1, 3–5)

Moreover, as stated in *Boyle v. Marshall & Ilsley Bank, supra* (p. 4), in order to come under sec. 231.21 (2), Stats., "an infant beneficiary must have some absolute and uncontingent interest in the trust estate" in order to render permissible and valid under that statute the act of a trustee in contravention of the terms of a trust. And as, under the provisions creating the testamentary trust, none of Francis' children or

his grandchild has presently any absolute and uncontingent interest in the trust estate; and as it may be that none of them will ever be entitled to such an interest, by presently adjudging and making any distribution of portions thereof to them there will be prejudiced the rights of persons whose presently contingent interests may ultimately become absolute. Likewise, as neither Thomas C. Conlin, B. Henry Conlin, or Howard H. Boyle have any absolute and uncontingent interest in the trust estate, and may never be entitled to actually receive any share in the trust estate at all, the partial assignments or disclaimers executed by them of their respective contingent interests in the trust assets do not relieve the situation. To those assignments or disclaimers there is applicable the conclusion stated in *Will of Luscombe,* 109 Wis. 186, 193, 85 N. W. 341,—

"It matters not that all persons now in existence who are beneficially interested in the conduct of the trustees have consented that they [the trustees] yield to the judgment of the circuit court. Those officers [the trustees] still owe a duty to possible unborn children, whose rights cannot be cut off by consent. . . . That duty is one of diligence to protect such helpless ones, and for breach of such duty, negligence, or laches, the trustees may in the distant future be called to account."

So in the case at bar other issue of Francis than his present children, possible issue of Thomas C. Conlin and B. Henry Conlin, and other issue than the present children of Howard H. Boyle, may become "such helpless ones" to whom the trustees owe the duty of protection above referred to.

The likely fact that the testatrix was deeply concerned about, and therefore endeavored to make provisions in her will which she considered adequate to provide for the support, maintenance, and education of Francis' children after his death, does not warrant the court to authorize the trustees to permit the use of part of the corpus of the trusts in question

for their support during his lifetime. That would be remaking the will and would not be "preserving the corpus of the trust,"—which she evidently considered of primal importance. (*Estate of Boyle, supra,* p. 637.)

Since our decisions on the prior appeals in relation to the trusts, the financial situation as to the amount of funds which may become available to Francis for the maintenance and support of his children and divorced wife has evidently improved to the extent, at least, that no part of his income from the trusts will be deducted by the trustees to pay former indebtedness to his mother; that he is not presently obliged to support his daughter Madeleine or son Henry; and that his actual cash receipts of income and salary from said trusts and the farm were in excess of $30,700 in 1945, $32,900 in 1946, and $8,834.08 from January 1 to March 1, 1947. Under these circumstances the adjudication sought in contravention of the provisions of the trusts is apparently rather unnecessary as a matter of fact, as well as neither warranted nor permissible as a matter of law. More appropriate and essential would seem to be the adoption by Francis of suitable methods of budgeting and controlling his income and financial affairs so that he can currently discharge with his available income his financial obligations for the support and welfare of himself and his family, and also his delinquent tax liability; or have some competent person wisely attend to such matters for him, if he is incapacitated in that respect.

*By the Court.*—Judgments affirmed.